# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DIVISION OF TEXAS
# BEAUMONT DIVISION

No. 1:07-CV-988

FIRST BAPTIST CHURCH OF
MAURICEVILLE, TEXAS

                              Plaintiff

v.

GUIDEONE MUTUAL INSURANCE
COMPANY and PAUL E. ODOM

                              Defendants

**Opinion Re Remand**

This opinion addresses plaintiff's motion to remand this case to the 128th Judicial District Court of Orange County, Texas.

## I. PARTIES; NATURE OF SUIT; FACTUAL BACKGROUND

### A. Parties

Plaintiff is First Baptist Church of Mauriceville, Texas ("First Baptist"), a Texas domestic non-profit corporation.[1] First Baptist's church buildings

---

[1] First Baptist's original petition does not aver its corporate status. The relevant information is available at the Texas Secretary of State website. Tex. Sec'y of State, SOSDirect, http://www.sos.state.tx.us/corp/sosda/index.shtml (last visited Sept. 25, 2008).

located in Orange County, Texas, allegedly sustained damages as a result of Hurricane Rita, which struck southeast Texas in September, 2005.

Defendants are GuideOne Mutual Insurance Company ("GuideOne") and Paul E. Odom ("Odom"). GuideOne is a citizen of Iowa.[2] Odom is a citizen of Texas.

## B. Factual Background and Proceedings

GuideOne issued to First Baptist a Texas commercial insurance policy (the "Policy") insuring First Baptist against direct physical loss of or damage to its property in Mauriceville, Orange County, Texas. The Policy was in effect at the time of the alleged losses occasioned by Hurricane Rita. First Baptist filed a claim under the policy for roof, water, and wind damage. GuideOne allegedly retained Odom, an independent insurance adjuster, to adjust First Baptist's claim.

On September 14, 2007, First Baptist filed this lawsuit in the 128th Judicial District Court of Orange County, Texas. First Baptist alleged that GuideOne denied First Baptist's claim for repairs of its insured property. GuideOne filed a notice of removal on December 28, 2007. Pending before the court is First Baptist's motion to remand the case to state court.

## C. Nature of Suit

First Baptist alleges that GuideOne failed to adequately settle or to make full payment on its claim. It asserts causes of action for breach of contract, breach of the duty of good faith and fair dealing, and numerous other violations

---

[2] Plaintiff's original state court petition describes GuideOne as a "Texas insurance company" but fails to specifically aver GuideOne's citizenship. GuideOne's notice of removal lists Iowa as its state of incorporation and principal place of business. Plaintiff has not contested GuideOne's statement.

of the Texas Insurance Code. Against Odom, First Baptist alleges three claims: (a) unspecified violations of the Texas Insurance Code; (b) tortious interference of a contract; and (c) tortious interference with a business relationship.

## II. MOTION TO REMAND

First Baptist argues that removal was improper because complete diversity of citizenship between all plaintiffs and all defendants does not exist in this case. Namely, defendant Odom is a citizen of Texas, as is First Baptist. Thus, the court lacks diversity jurisdiction.

GuideOne counters that Odom was fraudulently joined as a defendant, and as such, his citizenship does not matter for diversity purposes. GuideOne asserts that Odom has no relationship or involvement with any relevant party or fact. More pertinent to the issue at hand, GuideOne further argues that the petition states no specific facts against Odom, and that all claims asserted are invalid against an independent insurance adjuster. Therefore, First Baptist cannot establish any cause of action against Odom.

## III. AUTHORITY OF THE MAGISTRATE JUDGE

This case is assigned to Chief United States District Judge Thad Heartfield. It is referred to the undersigned United States magistrate judge pursuant to a referral order entered January 7, 2008. Magistrate judges cannot dispose of claims or defenses absent consent of all parties. A threshold question, therefore, is whether a motion to remand is within a magistrate judge's authority to hear and determine.

No definitive Fifth Circuit decision teaches whether remands constitute actions disposing of claims or defenses. Lower courts and other circuits differ on

this rudimentary question.³ Because the law is unsettled, because remand terminates further federal court proceedings, and because some remand orders are appealable,⁴ the undersigned employs a pragmatic procedure that preserves the prerogative of the district judge to whom the case is assigned. When remand is *proper*, the undersigned submits a report with a recommendation for remand. By objecting pursuant to Rule 72(b), Federal Rules of Civil Procedure, a party opposing remand may secure *de novo* review by the district judge prior to remand. Conversely, when remand is *inappropriate*, the undersigned simply denies the motion. The unsuccessful movant may then appeal that order to the presiding district judge pursuant to Rule 72(a).

---

³ Compare Saxon v. Thomas, No. 06-2339, 2007 WL 1974914, at *2 (W.D. La. June 29, 2007), Robinson v. Cheetah Transp., No. Civ. A. 06-0005, 2006 WL 1453036, at *1 (W.D. La. May 17, 2006), Vaquillas Ranch Co. v. Texaco Exploration & Production, Inc., 844 F. Supp. 1156, 1160-63 (S.D. Tex. 1994), and City of Jackson v. Lakeland Lounge of Jackson, Inc., 147 F.R.D. 122, 124 (S.D. Miss. 1993) (holding that motions to remand are not dispositive and, consequently, may be referred to a United States magistrate judge for determination), with Williams v. Beemiller, Inc., 527 F.3d 259, 266 (2nd Cir. 2008), Vogel v. U.S. Office Products Co., 258 F.3d 509, 517 (6th Cir. 2001); First Union Mortgage Corp. v. Smith, 229 F.3d 992, 996 (10th Cir. 2000), and In re U.S. Healthcare, 159 F.3d 142, 146 (3d Cir. 1998) (holding that inasmuch as remand orders banish litigants from federal court, they are equivalent to final decisions or dispositive actions that must ultimately be performed by a district judge).

⁴ Although remand orders are generally non-appealable, in some instances review is authorized by statute. See, e.g., 28 U.S.C. § 1447(d). Remand orders are reviewable when based on the forum selection clause of a contract. See Waters v. Browning-Ferris Indus., Inc., 252 F.3d 796, 797 (5th Cir. 2001). A remand order based on non-statutory grounds is reviewable. See Thermtron Products, Inc. v. Hermansdorfer, 423 U.S. 336, 345-52 (1976) (allowing review of remand order entered because district court's docket was too crowded); Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 712 (1996) (stating "only remands based on grounds specified in § 1447(c) are immune from review under § 1447(d).").

## IV. PRINCIPLES OF ANALYSIS

### A. Removal and Remand Procedure – Generally

Under the federal removal statute, 28 U.S.C. § 1441, a defendant can remove a civil action filed in state court to the federal district court for the district and division where the state court is located if that district court could have exercised original jurisdiction over the case.[5] Congress prescribes certain procedures and time requirements for the removal process. See 28 U.S.C. § 1446. A notice of removal must be filed within thirty days after a defendant is served with notice of suit, and all served and properly joined defendants must timely consent to removal. See 28 U.S.C. § 1446(b); Brown v. Demco, Inc., 792 F.2d 478, 482-483 (5th Cir. 1986) (citation omitted); see also Gillis v. Louisiana, 294 F.3d 755, 759 (5th Cir. 2002); Getty Oil Corp. v. Ins. Co. of North America, 841 F.2d 1254, 1262-63 (5th Cir. 1988).

To safeguard against wrongful removal, Congress authorizes motions to remand to the state court where the action originally was filed, based on various defects in the removal. See 28 U.S.C. § 1447(c). When a timely motion to remand is filed, the removing party's burden is to show that removal was proper. See B, Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (5th Cir. 1981).

### B. Improper Joinder

Generally, complete diversity of citizenship must exist between all plaintiffs and all defendants to create federal subject matter jurisdiction in a case governed by substantive state law. See Strawbridge v. Curtiss, 7 U.S. 267

---

[5] Congress specifically prohibits removal of certain actions that might have been brought originally in federal courts, e.g., Jones Act and FELA cases. See 28 U.S.C. § 1445.

(1806); Whalen v. Carter, 954 F.2d 1087, 1094 (5th Cir. 1992). However, only citizenship of *properly joined* parties matters. See Smallwood v. Illinois Cent. R.R. Co., 385 F.3d 568, 572 (5th Cir. 2004). Citizenship of an improperly joined party is disregarded entirely when determining the court's subject matter jurisdiction. See id.

The term "improper joinder" evolves from and includes "fraudulent joinder," a doctrine originally developed by courts to remedy bad faith joinder of a non-diverse party to prevent removal of a case to federal court. "Improper joinder" is a broader concept, however, and is adopted by the Fifth Circuit as its preferred terminology. Smallwood, 385 F.3d at 571 n.1.

The party asserting federal jurisdiction has the burden of proving that jurisdiction exists. See Peoples Nat'l Bank v. Office of the Comptroller of the Currency of the United States, 362 F.3d 333, 336 (5th Cir. 2004) ("The party claiming federal subject matter jurisdiction has the burden of proving it exists." (citing Pettinelli v. Danzig, 644 F.2d 1160, 1162 (5th Cir. 1981))); Guillory v. PPG Indus., Inc., 434 F.3d 303, 308 (5th Cir. 2005) ("The burden of proof is on the removing party."). It follows that when a removing party claims that non-diverse defendants are improperly joined, the burden of showing improper joinder rests with the removing party as part of its general duty of demonstrating federal jurisdiction.

To show improper joinder of non-diverse defendants, a removing party must prove either "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." Smallwood, 385 F.3d at 573 (citing Travis v. Irby, 326 F.3d 644, 646-47 (5th Cir. 2003)). This is a heavy burden. Travis, 326 F.3d at 649

(citing B, Inc., 663 F.2d at 549); Green v. Amerada Hess Corp., 707 F.2d 201, 205 (5th Cir. 1983).

The petition *as filed in state court* controls the inquiry. See Cavallini v. State Farm Mut. Auto Ins. Co, 44 F.3d 256, 264 (5th Cir. 1995); see also Griggs v. State Farm Lloyds, 181 F.3d 694, 699 (5th Cir. 1999) (stating that the court must determine if there could possibly be liability "on the pleaded claims in state court."). Thus, post-removal filings may not be considered when or to the extent that they present new causes of action or theories. See Griggs, 181 F.3d at 700 (citing Cavallini, 44 F.3d at 263). However, with respect to those matters pleaded in state court, a "trial court should resolve all disputed questions of fact in favor of the plaintiff and then determine whether there could possibly be a valid cause of action set forth under state law." B., Inc., 663 F.2d at 551; see also Green, 707 F.2d at 205.

**C. Framework of Analysis**

Ultimately, improper joinder analysis involves three discrete inquiries. The first is a common-sense assessment mentioned in Griggs. The second and third comprise a two-step analysis identified in Smallwood. These three determinative factors are now described separately:

    1.    <u>Does it Appear that Plaintiffs Intended to Pursue Claims?</u>

The first inquiry is whether it appears from the state court petition that the plaintiff actually intended to sue the non-diverse defendant. The court ascertains whether "*the record . . . support[s] any inference that [plaintiff] intended to actively pursue claims against [the allegedly improperly joined defendant].*" Griggs, 181 F.3d at 699 (italics added). Factors to consider include whether the defendant is only minimally mentioned, whether any actionable

facts or causes of action are specifically alleged against the defendant, and whether the defendant was ever served. Id.

### 2. Does State Law Recognize the Cause of Action?

A second inquiry is self-evident. If a plaintiff cannot recover from an in-state defendant because the asserted claim is not valid under state law, that defendant is improperly joined. See, e.g., Gray v. Beverly Enterprises-Mississippi, Inc., 390 F.3d 400, 405 (5th Cir. 2004) (explaining that if state law does not recognize the pleaded cause of action, there is no reasonable possibility for recovery, and remand should be denied).

### 3. Does State Court Petition Allege Sufficient Facts?

The third inquiry is whether the *facts alleged* are sufficient to sustain an asserted cause of action. Even when plaintiffs identify causes of action recognized by state law, defendants can defeat remand by showing that the state court petitions failed to allege "specific actionable conduct" sufficient to support the causes of action asserted against non-diverse defendants. Griggs, 181 F.3d at 699. Ultimately, "whether the plaintiff has stated a valid state law cause of action depends upon and is tied to the *factual fit* between the plaintiffs' allegations and the pleaded theory of recovery." Id. at 701 (emphasis added).

On this issue, the Fifth Circuit prescribes an inquiry similar to that employed in federal actions when entertaining motions to dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure. See Smallwood, 385 F.3d at 573. Conclusory allegations are insufficient. See Jernigan v. Ashland Oil Inc., 989 F.2d 812, 817 (5th Cir. 1993) (finding improper joinder when plaintiff's pleading contained only "conclusionary [sic] allegations, wholly lacking in specific factual support"); Waters v. State Farm Mut. Auto. Ins. Co., 158 F.R.D. 107, 109 (S.D.

Tex. 1994). Thus, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice . . . ." Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th Cir. 1993).

Circuit precedent is consistent with a recent holding of the Supreme Court in Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007). There, when discussing Rule 12(b)(6) standards, the court stated that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' *requires more than labels and conclusions*, and a *formulaic recitation of a cause of action's elements will not do.*" Id. at 1959 (emphasis added). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id.

These decisions collectively teach that a "'near-verbatim recitation of portions of [unfair settlement practices specified in the Texas Insurance Code]' does not create a colorable claim against an adjuster-defendant unless coupled with *facts* indicating the adjuster's *individual* role in the alleged events." Killion v. Allstate Texas Lloyds, No. CA-C-03-442-H, 2004 WL 612843, at *5 (S.D. Tex. Feb. 25, 2004) (quoting Bailey v. State Farm Lloyds, No. Civ. A. H-00-3638, 2001 WL 34106907, at *4 (S.D. Tex. Apr. 12, 2001)) (emphasis added). Similarly, conclusory allegations that "[d]efendants'" conduct violated the code without elaboration on what a given defendant supposedly said or did also fail. Bailey, 2001 WL 64106907, at *5. In short, a controlling state court petition that successfully alleges a recognized cause of action but fails to also allege facts giving notice of *how* the defendant's conduct gives rise to the asserted liability lacks the required specificity. Identifying only what law forms the basis of the complaint, without identifying how a defendant violated that law, proves only that there is a theoretical possibility that a cause of action *could* be stated against the defendant, not that the plaintiff *did* state a cause of action. See Travis, 326 F.3d at 648; Griggs, 181 F.3d at 701. This is what is meant by the

requirement that there be a "factual fit" between the pleaded cause of action and the plaintiffs' petition.[6]

## V. APPLICATION

First Baptist does not seek remand based on a procedural defect in removal, nor does it argue that the requisite amount in controversy to support federal jurisdiction is lacking. Rather, the only ground asserted by First Baptist for remand is want of subject matter jurisdiction due to lack of complete diversity of citizenship between it and defendant Odom. First Baptist and Odom are both citizens of Texas. Therefore, the court lacks subject matter jurisdiction unless GuideOne carries its burden of showing that Odom, was improperly joined. The court decides that question by employing the analytical rubric recited earlier in Section IV.C.

### 1. Does State Court Petition Reflect Intent to Pursue?

The initial inquiry is whether plaintiff's state court petition and the record existing at the time of removal support an inference of intent to pursue claims against Odom. This question is close – very close – but the court concludes that First Baptist's original state court petition is minimally sufficient to support an inference of intent to pursue claims against Odom. It does not mention Odom just once in the caption. Rather, the body of the petition contains a separate

---

[6] Applying Smallwood and Griggs creates an uneasy tension with comity implications. Using a *federal* Rule 12(b)(6) standard to test the validity of a *state* court petition is awkward. Texas notice pleading rules often are given a more liberal reading than their federal counterpart. Yet, Smallwood and Griggs effectively require that state court litigants – when filing suits in state courts – conform to federal pleading requirements to avoid removal. One might argue that this rule is unrealistic. Imperfect or not, it is the rule that governs.

paragraph alleging three distinct causes of action against Odom. Of those, two are asserted against Odom only.[7]

### 2. Does State Law Recognize the Asserted Causes of Action?

Texas statutory and common law clearly recognize causes of action for violations of the Texas Insurance Code, for tortious interference of a contract, and for tortious interference with a business relationship. At least one of these causes of action can be asserted against insurance adjusters. Chapter 541 of the Texas Insurance Code authorizes private causes of action against persons engaged in the business of insurance who employ unfair settlement practices. See Tex. Ins. Code Ann. § 541.002-541.003. In the context of suits based on unfair insurance settlement conduct, Texas recognizes that such causes of action may be asserted not only against an insurer, but also against individual and corporate adjusters and agents. See Liberty Mut. Ins. Co. v. Garrison Contractors, Inc., 966 S.W.2d 482, 486-87 (Tex. 1998); see also Jones v. Ace American Insurance Co., No. 1:06-CV-616, 2006 WL 3826998, at *4-5 (E.D. Tex. Dec. 22, 2006); McNeel v. Kemper Cas. Ins. Co., No. Civ. A. 3:04-CV-0734, 2004 WL 1635757, at *2-3 (N.D. Tex. July 21, 2004) (holding that an independent adjuster may be individually liable under the Texas Insurance Code, and, thus, may be added as a non-diverse defendant).[8]

---

[7] Otherwise, First Baptist's petition suffers from many of the deficiencies noted in Griggs, i.e., conclusory allegations lacking specific actionable conduct and simply restating statutory language forming the basis of its complaint without any explanation as to how Odom violated the statutes. Odom is never mentioned by name in the "Facts" section of the state court petition. Further, Odom was not served with process before or after removal.

[8] In its notice of removal, GuideOne argued that Texas does not recognize causes of action for insurance code violations or common law torts such as tortious interference against independently contracting insurance adjusters. In support, GuideOne cited Dear v. Scottsdale Ins. Co., 947 S.W.2d 908, 917 (Tex. App.—Dallas 1997), which held that an independent adjusting firm cannot be liable
(continued...)

Consequently, GuideOne fails to show that Odom is improperly joined on the basis that no claim asserted against Odom is cognizable under applicable state law.

### 3. Does State Court Petition Allege Sufficient Facts?

As discussed earlier, "[m]erely *pleading* a valid state law claim, or one whose validity is reasonably arguable, against the resident defendant does not mean that the joinder of the resident defendant is not fraudulent." Hornbuckle v. State Farm Lloyds, 385 F.3d 538, 542 (5th Cir. 2004). In addition to *identifying* a cause of action recognized under state law, the petition must *allege facts* that support that cause of action. See Larroquette v. Cardinal Health 200, Inc., 466 F.3d 373, 377-78 (5th Cir. 2006). The Fifth Circuit's Griggs/Smallwood standards (articulated earlier in Section IV.B.3.), augmented recently by the Supreme Court in Bell Atlantic Corp., delineate the degree of factual specificity required.

First Baptist's original state court petition does not satisfy the Griggs/Smallwood/Bell Atlantic standards with respect to the Texas Insurance Code violations asserted against defendant, Odom. No specific actionable conduct is alleged against Odom. Rather, the petition simply identifies Odom as the individual adjuster and observes that "an individual adjuster can be held

---

[8](...continued)
to an insured for "improper investigation and settlement advice, regardless of whether [the plaintiff] phrased his allegations as negligence, bad faith, breach of contract, tortious interference, or DTPA claims." Subsequently, however, the Fifth Circuit held that Natividad v. Alexsis, Inc., 875 S.W.2d 695 (Tex. 1994), the case relied on by Dear, was limited to the common law claim of breach of the duty of good faith and fair dealing.. Gasch v. Hartford Accident & Indem. Co., 491 F.3d 278, 282-83 (5th Cir. 2007). Under governing circuit law, the holding of Natividad does not bar claims under the Texas Insurance Code, and in fact, "*Garrison* explicitly authorizes it." Id. at 283 (holding that an extension of Natividad to Texas Insurance Code claims is "clearly precluded by *Garrison*.").

liable for actions taken in violation of the Texas Insurance Code."  Then, the petition merely refers back to the "Facts" section wherein *all* allegations describe conduct of *GuideOne*.  Odom is never mentioned by name or otherwise.  No specific code violations are attributed to Odom.  Clearly, there is no "factual fit" between First Baptist's allegations and the pleaded theory of recovery against Odom. Ultimately, all allegations are conclusory, wholly lacking specific factual support, and merely assert that Odom violated the Texas Insurance Code.  Essentially, the state court petition identifies only the law that forms the basis of the claims without identifying how Odom violated that law.

Assuming *arguendo* (i.e., without deciding) that First Baptist's common law tortious interference claims are cognizable against independent insurance adjusters under Texas law, the result does not change.  The elements of a cause of action for tortious interference of a contract are: (1) an existing contract; (2) a willful and intentional interference with that contract; (3) the act was a proximate cause of the plaintiff's damage; and (4) the plaintiff suffered actual damage or loss.  Butnaru v. Ford Motor Co., 84 S.W.3d 198, 207 (Tex. 2002). The elements of a cause of action for tortious interference with a business relationship are: "(1) there was a reasonable probability that [the plaintiff] would have entered into a business relationship; (2) the defendant acted maliciously by intentionally preventing the relationship from occurring with the purpose of harming the plaintiff; (3) the defendant was not privileged or justified in his actions; and (4) actual harm or damage occurred to the plaintiff as a result." American Med. Intern., Inc. v. Giurintano, 821 S.W.2d 331, 337 (Tex. App.—Hous. [14 Dist.] 1991).

The sole allegation against Odom in plaintiff's petition states that Odom interfered with plaintiff's insurance policy with GuideOne by "taking steps to intentionally minimize the claim and to not review damage which was obviously

caused by the Hurricane and by refusing to fully adjust the loss . . . ." Even a liberal construction of this sweeping averment does not support all elements of the tortious interference causes of action asserted.

## VI. CONCLUSION

First Baptist's original state court petition does not allege against Odom valid state law causes of action in the manner required by Griggs and Smallwood. While that petition shows a possibility that a cause or causes of action *could* be stated against Odom, it failed to state specific factual averments identifying *how* Odom violated the law in a manner giving rise to the asserted claims. Accordingly, the First Baptist's motion to remand must be denied.

An order denying plaintiff's motion to remand will be entered separately.

**SIGNED** this 29 day of September, 2008.

_____
Earl S. Hines
United States Magistrate Judge